# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

PAMELA V. BOWMAN, )
individually and as natural parent )
and next friend of )
CHARLES LUKE VENABLE, )
a minor, )
 ) Case No. 3:06-0207
Plaintiffs, ) Judge Trauger
 )
v. )
 )
WILLIAMSON COUNTY )
BOARD OF EDUCATION, )
 )
Defendant. )

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant,

Williamson County Board of Education (Docket No. 17-1), to which plaintiff Pamela Bowman

has responded (Docket No. 18). For the reasons discussed herein, the defendant's motion will be

granted.

## FACTUAL BACKGROUND

The plaintiff, Pamela v. Bowman, brings suit on behalf of her son, Charles Luke Venable

("Luke"), who is currently sixteen years old.[1] At all times relevant to these claims, Luke was a

---

[1]Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint
(Docket No. 1), her Memorandum in Opposition to Defendant's Motion for Summary Judgment
(Docket No. 18), and her Responses to Defendant Williamson County Board of Education's
Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment
(Docket No. 19).

student at Independent High School ("IHS"), which is located in Williamson County, Tennessee.

In October 2005, Devlin Sheffield ("Devlin"), an African-American IHS student who is two years older than Luke, threatened Luke on the school bus. Subsequently, Luke, who is not African-American, "became the target of taunts and other offensive behavior by African-American students." (*See* Docket No. 1 ¶ 16.)

On November 30, 2005, Devlin and other African-American students "committed a battery on Luke's person on school grounds at IHS," during which Devlin punched Luke in the face. (*See id.* ¶ 7.) That day, the plaintiff informed Vice Principal James Leckrone of the incident. In accordance with the defendant's anti-harassment and anti-bullying policies, Leckrone immediately investigated the matter. Devlin was subsequently arrested for assault, suspended, and sent to Williamson County's Alternative Learning Center ("ALC") for thirty days. The defendant was not aware of any confrontation between Luke and Devlin prior to this incident.

Following the November 30 incident, the plaintiff placed Luke on "homebound services," during which he did not attend classes at IHS. Luke did not return to IHS for the remainder of the fall semester, despite the fact that Devlin was at ALC, not IHS. At some point during this time, either the plaintiff or Luke received "hang-up phone calls" that, according to their caller identification, originated at Devlin's house.[2] The plaintiff alleges that IHS officials had given

---

[2]While the Plaintiff's Responses to Defendant Williamson County Board of Education's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment indicates that the plaintiff herself received the telephone calls, the plaintiff asserts in her Complaint that Luke received the calls. (*Compare* Docket No. 19 ¶ 15 ("Plaintiff alleges that she began to receive "hang-up" phone calls at her home . . . Admitted.") *with* Docket No. 1 ¶ 8 ("Luke was receiving 'hang up' phone calls at home.").)

2

her phone number to Devlin's father on the same day that she received these calls.

After Luke returned to IHS in January 2006, the plaintiff informed Leckrone that "people were making fun of Luke." (*See* Docket No. 19 ¶ 17.) Leckrone investigated the matter, but Luke could not identify all of the individuals involved. According to the defendant, Leckrone immediately addressed each student Luke named, but they all denied speaking to Luke.

Luke also indicated to Leckrone that "certain students were not [sic] blocking his entrance to the school cafeteria." (*See id.* ¶ 24.) Luke could not identify the students by name. Leckrone reviewed school surveillance cameras in order to substantiate Luke's claims but, according to the defendant, was unable to do so.

After Devlin returned to IHS from ALC, he either "rubbed his hands together" or shook Luke's hand on the school bus. (*See id.* ¶ 29.) Leckrone confronted Devlin about this matter as soon as the plaintiff reported it. Devlin informed Leckrone that the "hand rubbing" had no meaning and that Devlin "had no problem with Luke." (*See id.* ¶ 32.) After this incident, Leckrone asked Luke to report to him any further harassment or bullying that Luke experienced. Luke agreed to do so and has not reported any further incidents.

On March 15, 2006, the plaintiff brought suit under 42 U.S.C. § 1983 (2000), alleging that the defendant violated Luke's substantive due process rights when "[t]hrough its own affirmative acts, [it] either caused or greatly increased the risk of harm to Luke through an unwritten, but clearly understood, policy, practice or custom of condoning bullying and harassment." (*See* Docket No. 1 at 4.) The defendant now moves for summary judgment on the plaintiff's claims.

## **ANALYSIS**

3

I.  **Because no genuine issue of material fact exists as to whether the defendant is liable under Section 1983 for violating Luke's substantive due process rights, the defendant's Motion for Summary Judgment will be granted.**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla

4

of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

Section 1983 provides a federal cause of action for civil damages against any individual who deprives another of a right secured by the Constitution or by federal law while acting under the color of state law. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006); *Jones v. Reynolds*, 438 F.3d 685, 689 (6th Cir. 2006). A local governmental entity, such as the defendant here, may be held liable under Section 1983 for violations of a constitutional right or a federal law that were committed pursuant to a governmental "policy or custom." *See Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 694 (1978); *see also Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (noting that a school board qualifies as a local government entity). Thus, the court must determine if genuine issues of material fact exist as to (1) whether IHS officials are liable for failing to prevent a private individual from violating Luke's substantive due process rights; and then, if so, as to (2) whether the defendant may be held liable for such a failure.

### A. No genuine issue of material fact exists as to whether IHS officials are liable

5

**for failing to prevent a private individual from harming Luke.**

Where, as here, a party seeks to recover under Section 1983 for a scenario in which government officials allegedly failed to prevent one private party from injuring another, well established precedent "seldom permit[s] the claim to proceed." *Koulta v. Merciez*, 477 F.3d 442, 443 (6th Cir. 2007) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). Indeed, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," and the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney*, 489 U.S. at 195.

The Sixth Circuit, however, recognizes two exceptions to this general rule. Under the first exception, which the Supreme Court recognized in *DeShaney*, when "the State has so restrained the liberty of [an] individual that it renders him unable to care for himself," it has "a special relationship with the individual and thus an affirmative duty to protect him" *Jones*, 438 F.3d at 690. With respect to the second exception, which has come to be known as the "state-created danger" exception, the Sixth Circuit has held that, "when the 'State cause[s] or greatly increases the risk of harm to its citizens . . . through its own affirmative acts,' it has established a 'special danger' and a duty to protect its citizens from that risk." *Id.* (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)); *see also Koulta*, 477 F.3d at 445.

Although the plaintiff asserts the propriety of both exceptions, the first exception clearly does not apply here. (*See* Docket No. 18 at 3.) As noted by the defendant (*see* Docket No. 17-3 at 7), the Sixth Circuit has repeatedly indicated that "there is no 'special relationship' between a school and its students that gives rise to a constitutional duty." *See McQueen*, 433 F.3d at 464

6

n.4 (citing *Soper v. Hoben*, 195 F.3d at 845, 853 (6th Cir. 1999); *Doe v. Claiborne County*, 103 F.3d 495, 510 (6th Cir. 1996)). As such, only the state-created danger exception is properly considered.

> **1.     No genuine issue of material fact exists as to whether the state-created danger exception would allow the plaintiff to recover under Section 1983.**

In order to employ the state-created danger exception, a plaintiff must demonstrate the following: (1) an affirmative act by the state that either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff–as distinguished from the public at large–specifically at risk; and (3) that the state knew or should have known that its actions specifically endangered the plaintiff. *Koulta*, 477 F.3d at 445. Because no reasonable jury could find that the defendant committed an affirmative act that created or increased the risk that Luke would be harmed, the court need not address the other elements of this exception.

To demonstrate the first element of this test, *i.e.*, that the state committed an affirmative act that either created or increased the risk that Luke would be exposed to an act of violence, the plaintiff must show that Luke was "safer before the state action than he was after it." *Koulta*, 477 F.3d at 446 (internal quotation omitted). The Sixth Circuit has explicitly found this requirement to be met in only one case. *See Kallstrom*, 136 F.3d at 1067 (finding that defendant officials affirmatively placed plaintiff undercover officers in danger when the officials released private information from the officers' files to defense counsel representing violent gang members whom the officers had investigated). Comparatively, the Sixth Circuit has repeatedly found that officials did not create or increase the risk of harm where, for instance, they returned a mentally handicapped plaintiff to the home of a man who subsequently raped her, *see Bukowski*

7

*v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003); failed to seek medical attention for an already injured plaintiff, *see Weeks v. Portage County Executive Offices*, 235 F.3d 275, 278-79 (6th Cir. 2000); and left students unattended in a classroom, after which one student fatally shot another, *see McQueen*, 433 F.3d 466-67.

The plaintiff never specifically argues, in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, that IHS officials committed an affirmative act that increased Luke's risk of harm.[3]  She does assert, within the context of her arguments about the "special relationship" exception, however, that "[her] lawsuit hinges on a school administration essentially ignoring a dangerous situation AFTER IT WAS CALLED TO THE ADMINISTRATION'S ATTENTION."  (*See* Docket No. 18 at 4 (emphasis in original).)  Thus, if the plaintiff is alleging an affirmative act on the part of IHS officials at all, it is that they ignored "a very serious and potentially dangerous situation existing between two adolescent boys" in the months after Devlin's assault on Luke.  (*See id.* at 5-6.)  Even if IHS officials ignored Devlin and Luke's potentially combative relationship–an assertion that the defendant vigorously refutes with numerous examples of IHS officials' proactive responses to the plaintiff's complaints (*see* Docket No. 17-3 at 3-4, 12-14)– "an official's failure to act will not satisfy the [affirmative act] test."  *See Koulta*, 477 F.3d at 445.

Further, no genuine issue of material fact exists as to whether the IHS officials' purported ignoring of Luke's situation or, as the plaintiff alleges in her Complaint, their "policy, custom or practice of condoning bullying and harassment," created or increased Luke's risk of harm.  (*See*

---

[3]In her Complaint, the plaintiff alleges that IHS officials' unspecified affirmative acts created an "unwritten, but clearly understood, policy, practice or custom of condoning bullying and harassment."  (*See* Docket No. 1 ¶ 10.)

8

Docket No. 1 ¶ 10.)  While the plaintiff never indicates the specific nature of any harm that Luke may have experienced, she specifically emphasizes that she is complaining only about events that took place after Devlin's assault on Luke.  (*See* Docket No. 18 at 4.)  Thus, the only "harms" that could potentially be considered under this test are (1) the "hang-up" telephone calls that either the plaintiff or Luke received from someone at Devlin's house (*see* Docket No. 19 ¶ 15); (2) the fact that "people were making fun" of Luke (*see id.* ¶ 17); (3) the unconfirmed assertion that "certain students were not [sic] blocking [Luke's] entrance to the school cafeteria" (*see id.* ¶ 24); and the fact that Devlin, at one point, either "rubbed his hands together" or shook Luke's hand on the school bus (*see id.* ¶¶ 29, 31).

Even assuming that these acts qualify as "harms," the plaintiff never explains how IHS officials increased the risk of Luke's exposure to them.  Indeed, the plaintiff admits that Assistant Principal Leckrone interviewed Luke after he received notice from the plaintiff that "people were making fun of Luke" and that Leckrone promptly addressed each student that Luke named as one of the perpetrators.  (*See* Docket No. 10 ¶¶ 17-20.)  The plaintiff also acknowledges that "[t]he allegations that students were 'making fun' of Luke did not include any claim that Luke was being threatened or harmed in any way."  (*See id.* ¶ 21.)  Further, the plaintiff recognizes that Leckrone went so far as to review school surveillance videos in an effort to determine which students, if any, were blocking Luke's access to the cafeteria.  (*See id.* ¶ 25.)  She also acknowledges that Leckrone spoke to Devlin about the "hand rubbing" incident as soon as he learned about it, and that he ascertained from Devlin that he "had no problem with Luke." (*See id.* ¶¶ 30-32.)  Although the plaintiff alleges that IHS officials had given her phone number to Devlin's father on the same day that she received the "hang up" telephone calls, she never substantiates this claim, nor does she explain how this could qualify as a "harm."

9

Thus, as in *Bukowski*, *Weeks*, and *McQueen*, "the victim would have been in about the same or even greater danger even if the state officials had done nothing." *See McQueen*, 433 F.3d at 466. The actions of the IHS officials here do not rise to the level of the officials' actions in *Kallstron*, the one case in which the Sixth Circuit has deemed the affirmative act requirement to be fulfilled. *See Kallstrom*, 136 F.3d at 1067. Accordingly, no genuine issue of material fact exists as to whether IHS officials committed an affirmative act that created or increased the risk that Luke would be exposed to an act of violence by a third party. *See Koulta*, 477 F.3d at 445. Because such a showing is a necessary element of the state-created danger exception, no reasonable jury could find that this exception applies in this case to override the general rule that the Due Process Clause does not impose an obligation on state actors to prevent one private individual from invading the rights of another. *See id.*

**B.      In light of the above conclusion, the plaintiff's claim against the defendant fails as a matter of law.**

Because the defendant can only be held liable under Section 1983 if there is a showing of liability on the part of its officials, the determination that no genuine issue of material fact exists as to whether IHS officials violated the plaintiff's constitutional rights resolves the claim against the defendant as well. *See Jones*, 438 F.3d at 698; *Bukowski*, 326 F.3d at 712-13. Accordingly, the court need not determine whether the complained-of violations were committed pursuant to the defendant's custom or policy. *See Jones*, 438 F.3d at 698 (noting that, in such a situation, departmental policy or custom "makes no difference to the outcome of [the] dispute"); *see also Monell*, 436 U.S. at 694.

10

## **CONCLUSION**

Because no genuine issue of material fact exists as to whether IHS officials are liable under Section 1983 for violating Luke's substantive due process rights, the same is true with respect to the defendant's liability under that statute. As such, the defendant's Motion for Summary Judgment on the plaintiff's claims will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

Case 3:06-cv-00207   Document 26   Filed 05/18/07   Page 11 of 11 PageID #: 163